# IN THE COURT OF APPEALS OF IOWA

No. 22-0953
Filed October 5, 2022

**IN THE INTEREST OF L.S. and J.S.,**
**Minor Children,**

**A.S., Mother,**
        Appellant.
_____

        Appeal from the Iowa District Court for Black Hawk County, Daniel L. Block,

Associate Juvenile Judge.


        A mother appeals the termination of her parental rights.  **AFFIRMED.**



        Joseph G. Martin, Cedar Falls, for appellant mother.

        Thomas J. Miller, Attorney General, and Mary A. Triick, Assistant Attorney

General, for appellee State.

        Rachel Antonuccio of the Waterloo Juvenile Public Defender's Office,

Waterloo, attorney and guardian ad litem for minor children.



        Considered by Bower, C.J., and Vaitheswaran and Tabor, JJ.

**BOWER, Chief Judge.**

A mother appeals the termination of her parental rights.[1]  On our de novo review, we affirm.  *See In re W.M.*, 957 N.W.2d 305, 312 (Iowa 2021).

A.S. is the mother of L.S., born in 2017, and J.S., born in 2021.  During the summer of 2020, while the mother was in jail for stabbing her boyfriend J.T., L.S. and an older sibling were left in J.T.'s care.  Soon after the mother's release from jail in July, a report was made to the department of human services (DHHS)[2] that J.T. had touched the older child inappropriately; the mother and J.T. denied any inappropriate physical contact, and the mother tried to convince the older child the touching did not happen.  A written safety plan prohibiting J.T. from having unsupervised contact with the children was entered.  In August, J.T. was reported to have abused illegal drugs while caring for L.S. and the older sibling.

In September, both L.S. and the older sibling tested positive for illegal drugs and were removed from the home and placed in family foster care.[3]  Also in September, the mother was given a deferred judgment on three charges from the June 2020 stabbing incident and was placed on probation.  Over the course of 2020, DHS issued founded child abuse reports against the mother for physical abuse, presence of illegal drugs, and denial of critical care.

---

[1] The supreme court dismissed the appeal by J.S.'s father, J.T., as untimely.  There is no paternal appeal concerning L.S.

[2] In 2022, the legislature merged the department of human services with the department of public health into the Iowa Department of Health and Human Services, with the transition starting July 1, 2022.  See 2022 Iowa Acts ch. 1131 § 51.

[3] The older child was initially in foster care with L.S. but was later placed with a paternal relative; the older child is not a subject of this appeal.

When J.S. was born in May 2021, the hospital refused to discharge the child due to the mother's comments about leaving the state and placing the child with J.T. in Wisconsin. The child was removed by court order and placed with L.S.'s foster family.

In early July, J.T. was arrested for domestic abuse assault on the mother, and a no-contact order was issued. Later in July, and again in August, J.T. was charged with violating the no-contact order.

The mother made progress and participated in services, including taking anger-management classes, completing a SafeCare parenting program, and attending therapy. But, as a result of a December probation violation, the mother was placed in a residential correctional facility in February of 2022. After violating the rules at the residential facility, she was moved to jail in April where she remained until after the April 25 termination hearing. The mother swings between cooperating with services and displaying hostility and resistance to DHS and other providers.

On May 18, the juvenile court found grounds for termination of the mother's parental rights had been established under Iowa Code section 232.116(1)(e), (f), and (h) (2022).

The mother appeals, asserting termination of her parental rights is not in the best interests of the children. She argues the court's main concerns have been resolved. She claims the juvenile court should have deferred permanency because she expected to be placed at a women's correctional facility where she could soon reengage in services and be available for the children to be placed with her.

Normally, we follow a three-step analysis when reviewing the termination of parental rights. *In re A.S.*, 906 N.W.2d 467, 472 (Iowa 2018). We determine if a ground for termination under Iowa Code section 232.116(1) has been established, if the best-interests analysis of section 232.116(2) supports termination; and if an exception to termination in section 232.116(3) applies. *Id.* at 472–73. If any step is not contested, we need not address it. *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010). Here, the mother does not contest either the first or third steps.

"[T]he court is required to use the best-interest framework established in section 232.116(2) when it decides what is in the best interest of the child." *Id.* at 37. Therefore, we "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." Iowa Code § 232.116(2). This includes considering the child's foster placement and relevant testimony or written statement from a foster parent. *See id.* § 232.116(2)(b).

The juvenile court found:

> [The mother] has not acknowledged how her behaviors, history of domestic violence[,] and putting her own needs ahead of her children has affected her life or placed the children at risk. [She] has demonstrated no meaningful effort at discontinuing her relationship with [J.T.] or follow through services which may assist her in providing a safe and stable home for the children, despite nearly two years of services. [The mother] has failed to follow through with mental health counseling which could assist her in addressing the issues which led to the children's removal from her care or prevent her from perpetrating further abuse or neglect.

L.S. has expressed fear of the mother to various service providers, and the child's behavior regressed after visits. J.S. has never been in the mother's custody, and they have only a limited bond. The case started in the summer of

2020 with domestic violence by the mother and an unsafe caretaker for the children.  Despite participating in anger-management classes, the mother continued to have outbursts, which set her back in her visitation and probation, and has played a part in her return to jail at the time of the termination hearing.

"It is well-settled law that we cannot deprive a child of permanency after the State has proved a ground for termination under section 232.116(1) by hoping someday a parent will learn to be a parent and be able to provide a stable home for the child."  *P.L.*, 778 N.W.2d at 41.  "Time is a critical element," and once the statutory period for reunification has passed, "termination proceedings must be viewed with a sense of urgency."  *In re C.B.*, 611 N.W.2d 489, 495 (Iowa 2000).  It is not in these children's best interests to wait longer for the mother to establish a safe, stable, and nurturing home.

Termination of the mother's parental rights is in the best interests of the children, and additional time is not warranted.

**AFFIRMED.**